1  LANE POWELL PC
   Callie A. Castillo, WSBA No. 38214
2  Devon J. McCurdy, WSBA No. 52663
   Angela Foster, WSBA No. 52269
3  Daniel Miller, WSBA No. 56810
   1420 Fifth Avenue, Suite 4200
4  P.O. Box 91302
   Seattle, Washington 98111-9402
5  Telephone:  206.223.7000
   Facsimile:  206.223.7107
6  castilloc@lanepowell.com
   mccurdyd@lanepowell.com
7  fostera@lanepowell.com (*admission to Eastern District of Washington forthcoming*)
   millerd@lanepowell.com (*admission to Eastern District of Washington forthcoming*)
8  *Counsel for the Homeowners, Builders, and Suppliers*

9  BAKER BOTTS L.L.P.
   Megan H. Berge (DC Bar No. 983714) (*pro hac vice application forthcoming*)
10 Thomas Jackson (DC Bar No. 384708) (*pro hac vice application forthcoming*)
   Scott Novak (DC Bar No. 1736274) (*pro hac vice application forthcoming*)
11 700 K Street NW
   Washington, D.C. 20001
12 202-639-1308
   megan.berge@bakerbotts.com
13 thomas.jackson@bakerbotts.com
   scott.novak@bakerbotts.com
14
   Francesca Eick (WA Bar No. 52432)
15 401 S 1st, Suite 1300
   Austin, TX 78704
16 512-322-2672
   francesca.eick@bakerbotts.com
17 *Counsel for the Utilities*

18          **UNITED STATES DISTRICT COURT**
          **FOR THE EASTERN DISTRICT OF WASHINGTON**
19

20 JAMON RIVERA, an individual;        CASE NO.
   INLAND NW AGC, a membership
   organization; SPOKANE HOME
21 BUILDER'S ASSOCIATION, a

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 1
Case No.
132285.0009/9391455.1

nonprofit corporation; WASHINGTON STATE ASSOCIATION OF UA PLUMBERS, PIPEFITTERS AND HVAC/R SERVICE TECHNICIANS, a labor organization; CONDRON HOMES LLC, a limited liability company; PARAS HOMES LLC, a limited liability company; GARCO CONSTRUCTION INC., a for-profit corporation, NATIONAL PROPANE GAS ASSOCIATION, a national trade association, CITIZEN ACTION DEFENSE FUND, a nonprofit corporation; AVISTA CORPORATION; CASCADE NATURAL GAS CORPORATION; AND NORTHWEST NATURAL GAS COMPANY,

Plaintiffs,

v.

WASHINGTON STATE BUILDING CODE COUNCIL,

Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I.    INTRODUCTION

1. In this action, Plaintiffs Jamon Rivera, Inland NW AGC, Spokane Homebuilder's Association, Washington State Association of UA Plumbers, Pipefitters, and HVAC/R Service Technicians, Condron Homes LLC, Paras Homes, LLC, Garco Construction Inc., National Propane Gas Association, and Citizen Action Defense Fund (the "Homeowners, Builders, and Suppliers"), and Avista Corporation, Cascade Natural Gas Corporation, and Northwest Natural Gas Company (the "Utilities"), collectively the "Coalition," seek declaratory and injunctive relief under federal law against enforcement of provisions of the Washington State Energy Code

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

that ban the use of natural gas appliances that are subject to regulation under the federal Energy Policy and Conservation Act ("EPCA").

2. Defendant Washington State Building Code Council has violated EPCA by amending the Washington State Energy Code to outright ban the use of EPCA-covered appliances in many cases.

3. By banning the use of EPCA-covered gas appliances, the Washington State Energy Code interferes with commercial and consumer energy choice; jeopardizes jobs; impairs commerce; and increases building and energy costs for Washington residents and businesses.

4. The Washington State Energy Code has irreparably harmed the Coalition, as homeowners and builders are already choosing to forgo gas services in light of the Code's restrictions on gas appliances.

5. This Court has authority to grant the relief sought under 28 U.S.C. §§ 1331, 2201, 42 U.S.C. § 1983, and 42 U.S.C. § 6306(c)(1).

## II.    JURISDICTION AND VENUE

6. Jurisdiction is proper because, under 42 U.S.C. § 6306(c), federal district courts have express jurisdiction over suits brought by any adversely affected person concerning state compliance with EPCA.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b) because, among other things, (i) the actions violating federal law stated in this Complaint impose injury in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

1   this District, where the Coalition members collectively reside, do business, and have

2   a substantial number of customers and would-be customers (individuals, businesses,

3   and others who would be customers if not for the Washington State Energy Code),

4   and (ii) the regulatory provisions at issue will be enforced here.

5                              **III.   PARTIES**

6       8.  Plaintiff Jamon Riviera is an individual homeowner in Yakima, Washington

7   who has been deprived of energy choice to effectively heat his home at lower cost.

8       9.  Plaintiff Inland Northwest Associated General Contractors ("Inland NW

9   AGC") is a non-profit member organization that represents over 380 companies

10   involved in the construction industry throughout Eastern Washington.

11      10. Plaintiff Spokane Home Builders Association ("SHBA") is a non-profit

12   member organization that represents over 750 member companies in the construction

13   industry in seven counties in Washington, including Spokane, Whitman, Pend Oreille,

14   Stevens, Ferry, Lincoln, and Grant.

15      11. Plaintiff Washington State Association of UA Plumbers, Pipefitters and

16   HVAC/R Service Technicians is a labor organization, consisting of six Washington

17   membership organizations including Plumbers and Steamfitters UA Local 44 which

18   represent workers in the plumbing, pipefitting, and HVAC trades in the Spokane area.

19      12. Plaintiff Condron Homes LLC is a limited liability corporation based in

20   Spokane, Washington that is engaged in the construction of new residential buildings.

21

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 4
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

13. Plaintiff Paras Homes LLC is a limited liability corporation based in Spokane, Washington that is engaged in the construction of new residential buildings.

14. Plaintiff Garco Construction Inc. ("Garco") is a Washington State for-profit corporation that engages in residential, civil, and commercial construction. Garco is based in Spokane, Washington with projects nationwide and throughout Washington.

15. Plaintiff National Propane Gas Association ("NPGA") is a national trade organization, representing the U.S. propane industry and approximately 2,400 members, including local Washington companies and co-ops. The NPGA has state and regional affiliates across all 50 states.

16. Plaintiff Citizen Action Defense Fund is a non-profit corporation that works to protect the economic rights of the citizens of Washington.

17. Plaintiff Avista Corporation ("Avista") is a public utility that provides electricity to 402,000 customers and natural gas to 368,000 customers across four northwestern states, including Washington.

18. Plaintiff Cascade Natural Gas Corporation ("Cascade") is a public utility that provides natural gas to over 300,000 customers located in smaller, mostly rural communities across Washington and Oregon.

19. Plaintiff Northwest Natural Gas Company ("NW Natural") is a public utility that provides natural gas distribution services to more than 770,000 customers across the Pacific Northwest, including Washington.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

20. Defendant Washington State Building Code Council ("SBCC") is the Washington state agency that establishes building code requirements for the state and that adopted the amendments to the Washington State Energy Code at issue.

## IV.    RIPENESS

21. The claims asserted herein are ripe for review because Plaintiffs challenge the facial validity of certain provisions of the Washington State Energy Code, thereby raising a legal question. When a question is "predominantly legal," there is generally no need to await further factual development. *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 201 (1983).

## V.    FACTUAL ALLEGATIONS

**The Washington State Energy Code**

22. In 2022, the SBCC adopted amendments to the Washington State Energy Code designed to ban or substantially limit the use of gas appliances in many instances.

23. These amendments came in two stages.  On April 22, 2022, the SBCC adopted amendments to the Commercial Provisions of the Washington State Energy Code ("Commercial Provisions") that restrict the use of natural gas appliances in commercial buildings. The amendments become effective July 1, 2023.

24. On November 4, 2022, the SBCC adopted amendments to the Residential Provisions of the Washington State Energy Code ("Residential Provisions") that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

1    restrict the use of natural gas appliances in residential buildings. These amendments

2    also become effective July 1, 2023.

3        25.  The Commercial Provisions provide a "prescriptive compliance" pathway and

4    a "total building performance compliance" pathway. In general, the prescriptive

5    compliance pathway requires that each element of a building have a minimum

6    acceptable standard, whereas the performance pathway requires modeling the

7    building as a whole to predict energy usage and determine compliance with target

8    figures for site energy use and carbon emissions. Buildings must comply with one of

9    the two pathways. Section C401.2.

10        26. The Commercial Provisions' prescriptive and total building performance

11    compliance pathways generally ban the use of natural gas appliances for heating,

12    ventilation, and air conditioning ("HVAC") systems and water heating systems.

13    Section C403.1.4 ("HVAC heating energy shall not be provided by . . . fossil fuel

14    combustion appliances."); Section C404.2.1 ("Service hot water shall be provided by

15    an electric air-source heat pump water heating (HPWH) system . . . ."); Table C407.2

16    (incorporating Section C403.1.4 and Section C404.2.1 into the total building

17    performance pathway's mandatory requirements).

18        27. The Residential Provisions also provide a prescriptive compliance pathway

19    and a total building performance compliance pathway. Buildings must comply with

20    one of the two pathways. Section R401.2.

21

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 7
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

28. The Residential Provisions' prescriptive and total building performance compliance pathways generally require that water heating shall be provided by an electric or gas heat pump system. Section R403.5.7 ("Service hot water in one- and two-family dwellings and multiple single-family dwellings (townhouses) shall be provided by a heat pump system."); Table R405.2(1) (incorporating Section R403.5.7 into the total building performance pathway's mandatory requirements). These provisions ban gas-fired water heating systems that are not heat pumps, such as conventional tanked gas water heaters, high efficiency condensing tanked water heaters, and tankless/instant water heaters.

29. The Residential Provisions' prescriptive compliance pathway likewise requires that space heating shall be provided by an electric or gas heat pump system. Section R403.13 ("Space heating shall be provided by a heat pump system."). This bans gas-fired space heating systems that are not heat pumps, such as gas-fired furnaces.

30. The Washington State Energy Code generally imposes the above restrictions on gas appliances in newly constructed buildings; the restrictions also apply to the alterations of or additions to existing buildings.

31. The Washington State Energy Code broadly defines an "alteration" as "[a]ny construction, retrofit or renovation to an existing structure other than repair or addition. Also, a change in a building, electrical, gas, mechanical or plumbing system

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

that involves an extension, addition or change to the arrangement, type or purpose of the original installation." Section C202.1-A; Section R202.

32. The Washington State Energy Code defines an "addition" as "[a]n extension or increase in the *conditioned space* floor area, number of stories, or height of a building or structure." *Id.* (emphasis in original).

33. The Commercial Provisions generally require that alterations and additions comply with the Commercial Provisions' restrictions on gas appliances for newly constructed buildings. Section C503.4.6 (applying the Commercial Provisions' restrictions on gas space heating appliances to alterations); Section C503.5 (applying the Commercial Provisions' restrictions on gas water heating appliances to alterations); Section C502.2.4 (applying the Commercial Provisions' restrictions on gas space heating appliances to additions); Section C502.2.5 (applying the Commercial Provisions' restrictions on gas water heating appliances to additions).

34. Likewise, the Residential Provisions generally require that alterations and additions comply with the Code's restrictions on gas appliances for newly constructed buildings. Section R503.1.2 (applying the Residential Provisions' restrictions on gas space heating appliances to alterations); Section R503.1.3 (applying the Residential Provisions' restrictions on gas water heating appliances to alterations); Section R502.3.2 (applying the Residential Provisions' restrictions on gas space heating

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 9
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

appliances to additions); Section R502.3.3 (applying the Residential Provisions' restrictions on gas water heating appliances to additions).

35. Thus, Sections C403.1.4, C404.2.1, Table C407.2, C502.2.4, C502.2.5, C503.4.6, C503.5, R403.5.7, R403.13, Table R405.2(1), R503.1.2, R503.1.3, R502.3.2, and R502.3.3 of the Washington State Energy Code (collectively, "Appliance Restrictions") ban gas appliances in many instances.

**The Washington Energy Code Harms Coalition Members**

36. Coalition members are suffering and will suffer a variety of harms as a result of Defendant's adoption of the Appliance Restrictions.

37. Beginning July 1, 2023, homeowners, businesses, and residential and commercial builders will be prohibited from choosing gas appliances in many instances due to the Appliance Restrictions, and as a result, these groups will be more likely to forego gas service altogether, thus also harming suppliers.

38. The Appliance Restrictions are already causing irreparable harm to homeowners, builders, and suppliers who are being forced to make costly changes to their building and infrastructure plans now in order to account for Washington State's pending restrictions on certain types of appliances and energy use, which will become effective in the very near future.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 10
Case No.
132285.0009/9391455.1

39. The Appliance Restrictions unnecessarily increase the costs of home and commercial building, as well as ownership and maintenance, by eliminating effective and available energy appliances for heating water and ambient air.

40. The Appliance Restrictions will also impair skilled workers specializing in the installation, maintenance, and repair of gas-powered systems and appliances by depriving them of jobs and their livelihood. Labor organizations representing these workers will lose members.

41. The Appliance Restrictions have caused the Utilities harm through the erosion of their customer base through the permanent loss of new customers over time.

42. The Appliance Restrictions harm Utilities' customers by increasing over time the cost of gas service per customer. Absent the Utilities' ability to grow, they will need to maintain the current gas system to ensure safety, reliability, and resiliency based on revenue from their currently existing customers. Costs to maintain the current gas system will be borne by fewer customers.

**The History of Federal Regulation of Appliance Energy Use**

43. The Washington State Energy Code impermissibly regulates the energy use of natural gas appliances, which is an area that Congress directed the U.S. Department of Energy ("DOE") to regulate through the adoption of federal energy efficiency standards under EPCA. 42 U.S.C. § 6201 *et seq.*

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 11
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

44.  EPCA was first passed in 1975 to create a comprehensive energy policy to address the serious economic and national security problems associated with our nation's continued reliance on foreign energy resources.

45. The original EPCA was designed to "(1) maximize domestic production of energy and provide for strategic storage reserves of crude oil, residual fuel oil and refined petroleum products; (2) . . . minimize the impact of disruptions in energy supplies by providing for emergency standing measures; (3) provide for domestic crude oil prices that will encourage domestic production in a manner consistent with economic recovery; and (4) reduce domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs." S. Rep. No. 94-516, at 116-17 (1975).

46. Since 1975, Congress has amended EPCA several times, progressively moving away from a laissez faire approach to appliance efficiency that relied upon consumers to choose more efficient appliances, and towards binding federal energy efficiency standards. Each amendment to EPCA further emphasized the federal government's intent to regulate appliance energy use and efficiency, and further limited states' abilities to set their own standards.

47. In its original form in 1975, EPCA's provisions regarding consumer appliances focused on requiring labeling of appliances, reasoning that consumers would choose more efficient appliances if they had access to accurate information about efficiency.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

Thus, the statute required manufacturers to label their appliances and provided that the Secretary of the Federal Energy Administration should utilize energy efficiency standards if the labeling program proved ineffective. The legislative history makes clear Congress's intent at the time: "it is the Committee's hope that voluntary efforts by manufacturers and better consumer information will make energy efficiency standards unnecessary; however, should the labeling program not suffice, energy efficiency standards should be utilized to achieve the goals of the legislation." H.R. Rep. No. 94-340, at 95 (1975).

48. Originally, EPCA permitted significant state involvement in appliance regulation. It allowed state regulations that differed from the federal regulations if the state regulations were justified by a substantial state or local need, did not interfere with interstate commerce, and were more stringent than the federal standard.

49. In 1978, Congress passed a range of statutes known as the National Energy Act ("NEA"), which gave the federal government broader authority over energy policy to ensure national security, decrease energy consumption, reduce dependency on energy imports, generate a strategic petroleum reserve, and broadly develop reliable sources of energy for sustained economic growth. *See* Julia Richardson and Robert Nordhaus, The National Energy Act of 1978, 10 Nat. Res. & Env't 62, 62-63 (1995). President Carter also created the federal DOE in 1977 to coordinate a federal response to the nation's energy problems.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 13
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

50. One of these 1978 statutes passed as part of NEA was the National Energy Conservation and Policy Act ("NECPA"). NECPA amended the 1975 EPCA. Rather than relying exclusively on labeling, NECPA required DOE to prescribe minimum energy efficiency standards for certain products. NECPA also strengthened the preemption provisions in EPCA, allowing state regulations that were more stringent than federal regulations *only* if the Secretary found there was a significant state or local interest to justify the state's regulation and the regulation would not unduly burden interstate commerce.

51. Despite the NECPA's new requirements, DOE did not initially adopt federal minimum energy standards. Instead, it "initiated a general policy of granting petitions from States requesting waivers from preemption. As a result, a system of separate State appliance standards ha[d] begun to emerge and the trend [was] growing." S. Rep. No. 100-6, at 4 (1987).

52. In 1987, Congress responded by passing the National Appliance Energy Conservation Act ("NAECA"). The purpose of the NAECA amendment was "to reduce the regulatory and economic burdens on the appliance manufacturing industry through the establishment of national energy conservation standards for major residential appliances." S. Rep. No. 100-6, at 1 (1987).

53. As the Senate recognized, varying state standards created "the problem of a growing patchwork of differing state regulations which would increasingly

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107
132285.0009/9391455.1

complicate [appliance manufacturers'] design, production and marketing plans." S. Rep. No. 100-6, at 4 (1987). Similarly, the reports about NAECA in the House of Representatives make clear that the bill was "designed to protect the appliance industry from having to comply with a patchwork of numerous conflicting State requirements." H.R. Rep. No. 100-11, at 24 (1987).

54. Thus, NAECA contained "two basic provisions:" "[t]he establishment of Federal standards and the preemption of State standards." S. Rep. No. 100-6, at 2 (1987). "In general, these national standards would preempt all State standards." *Id.*

55. While states could seek permission to establish their own standards, "achieving the waiver is difficult." S. Rep. No. 100-6, at 2 (1987). It would require showing an unusual and compelling local interest, and the waiver could not be granted if the "State regulation is likely to result in the unavailability in the State of a product type or of products of a particular performance class, such as frost-free refrigerators." *Id.* Congress intended to allow only "performance-based codes" that "authorize builders to adjust or trade off the efficiencies of the various building components so long as an energy objective is met." *Id.* at 10–11. To avoid preemption, a state building code provision must "establish 'credits' for various conservation measures, to provide, to the greatest degree possible, one-for-one equivalency between the energy efficiency of these differing measures and the credits provided for such energy efficiency." *Id.* at 11. The Senate chose this requirement "to assure that the credits for exceeding

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 15
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

1   Federal standards are even-handed and are not unfairly weighted resulting in undue

2   pressure on builders to install covered products exceeding Federal standards." *Id.*

3   56. In 1992, Congress amended EPCA once more through the Energy Policy Act

4   of 1992. That amendment expanded the federal appliance program to include energy

5   efficiency standards for commercial and industrial appliances as well as consumer

6   appliances.

7   57. Thus, in its present form, EPCA covers both consumer and

8   commercial/industrial appliances, and it sets federal standards for the energy use and

9   efficiency of those products.

10   **EPCA's Regulation of Consumer and Industrial Appliances**

11   58. Rather than allowing joint regulation by states and the federal government,

12   Congress has adopted a framework for EPCA in which the federal government sets

13   nationwide standards for the national markets for appliances, with only a very limited

14   role for states. In fact, EPCA expressly preempts state regulation of appliance energy

15   use and efficiency, with only narrow exceptions. The statute sets out specific

16   requirements that must be met to qualify for one of these narrow exceptions. In other

17   words, Congress meant to preempt the entire field of energy use by covered

18   appliances, leaving DOE to set nationwide standards and establishing detailed

19   conditions that state regulations must meet to avoid preemption.

20

21

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 16
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

59. EPCA's energy efficiency and use regulations apply to "covered products." EPCA defines "covered products" for consumers as the types of products listed in Section 6292 of the Act. 42 U.S.C. § 6291(2). Section 6292 in turn lists 19 types of defined covered products, including "water heaters" and "furnaces." *Id.* § 6292(a). Section 6295 sets out the energy conservation standards for these covered products.

60. EPCA defines a "consumer product" as one "(A) which in operation consumes, or is designed to consume, energy . . . and (B) which, to any significant extent, is distributed in commerce for personal use or consumption by individuals[.]" *Id.* § 6291(1). The definition of a consumer product is "without regard to whether such article of such type is in fact distributed in commerce for personal use or consumption by an individual . . . ." *Id.* In other words, products which are regularly sold to individuals may be classified as consumer products, regardless of whether a particular *unit* of the product has been purchased by an individual or by a business.

61. The express preemption in EPCA's consumer product regulations states that "effective on the effective date of an energy conservation standard established in or prescribed . . . for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product unless the regulation" falls within certain enumerated exceptions. *Id.* § 6297(c).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 17
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

62. "Energy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use . . . ." *Id.* § 6291(4). "Energy" is defined as "electricity, or fossil fuels." *Id.* § 6291(3).

63. Thus, EPCA's consumer standards preempt state regulations concerning the quantity of electricity or fossil fuels consumed by appliances (including water heaters and furnaces) which are regularly sold to individuals.

64. Similarly, EPCA also governs the energy efficiency and energy use of certain commercial and industrial appliances. *Id.* § 6311-17.

65. Like EPCA's consumer standards, the industrial standards explicitly "supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established" in the federal statute. *Id.* § 6316(b)(2)(A).

66. "Energy use," for the purposes of the industrial standards, is defined as "the quantity of energy directly consumed by an article of industrial equipment at the point of use. . . ." *Id.* § 6311(4). The definition of "energy" refers back to the definition in the consumer standards in Section 6291: energy is "electricity, or fossil fuels." *Id.* §§ 6311(7), 6291(3).

67. EPCA also prescribes standards for various types of "industrial equipment," including "commercial package air conditioning and heating equipment," "warm air furnaces," and several types of water heaters. *Id.* § 6311(2)(B). Those products are

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107
132285.0009/9391455.1

"industrial" rather than "consumer" if they are "distributed in commerce for industrial or commercial use" to "any significant extent," and do not qualify as consumer products under that portion of the statute. *Id.* § 6311(2)(A).

68. Thus, EPCA's standards for consumer products and industrial equipment preempt state and local regulations concerning the quantity of electricity or fossil fuels consumed by heating equipment, water heaters, and furnaces which are regularly sold for residential, industrial, or commercial use.

69. As a result, EPCA preempts the Appliance Restrictions (Sections C403.1.4, C404.2.1, Table C407.2, C502.2.4, C502.2.5, C503.4.6, C503.5, R403.5.7, R403.13, Table R405.2(1), R503.1.2, R503.1.3, R502.3.2, and R502.3.3 of the Washington State Energy Code), because these sections concern the quantity of fossil fuels consumed by EPCA-covered gas space and water heating appliances which are regularly sold for residential, commercial, and industrial use. EPCA also preempts any other provisions of the Washington State Energy Code that ban or significantly restrict the energy use of EPCA-covered products.

70. The Appliance Restrictions concern the quantity of natural gas consumed by appliances in the buildings they regulate because in many instances they prohibit the installation of EPCA-covered products. As a result, the Appliance Restrictions require that *no* natural gas is used by such products, or effectively result in the use of no natural gas by such products. Stated another way, these provisions effectively require

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 19
Case No.

132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

that the quantity of natural gas used in certain covered products is zero, when the national standards promulgated by DOE specify levels of energy efficiency that are based on different, non-zero levels of gas use by covered products.

71. The Homeowners, Builders, and Suppliers include individuals, companies, and workers that purchase, install, and maintain qualified "consumer products" and "industrial/commercial products" under EPCA, or provide supply services for these products. The Utilities supply gas to appliances that qualify as "consumer products" and as "industrial/commercial products" under EPCA. By banning the use of these EPCA-covered products, the Appliance Restrictions harm the Coalition members, and Washington residents and businesses, by impermissibly limiting energy choice.

**The Appliance Restrictions Do Not Qualify for EPCA's Preemption Exemption for Consumer Appliances**

72. EPCA contains only limited exceptions to the general rule of preemption. For consumer appliances, a state or local regulation is not preempted if it "is in a building code for new construction" and meets seven specific requirements. 42 U.S.C. §§ 6297(c)(3), (f)(3). The regulation must meet *all seven* of these requirements to avoid preemption. The seven requirements, taken together, are intended to allow only performance-based codes that give builders choice about how to meet overall efficiency or conservation objectives, ensuring an even-handed policy that does not pressure builders to choose one type of appliance over another. *See* S. Rep. 100-6, at 10–11 (1987).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 20
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

73. The Appliance Restrictions relating to consumer products do not meet all seven requirements listed in Section 6297(f)(3), and thereby fail to avoid preemption. For example, the first requirement is that "[t]he code permits a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective." 42 U.S.C. § 6297(f)(3)(A). The Appliance Restrictions do not meet this requirement, because they do not set an "energy consumption or conservation objective for a building" that allows a builder to select items that, in combination, meet the objective. Instead, in many instances, the builder cannot select *any* space heating or water heating appliances that use natural gas, no matter the energy use or efficiency of those particular appliances.

74. The second requirement to avoid preemption is that "[t]he code does not require that the covered product have an energy efficiency exceeding the" federal EPCA standards in section 6295, absent a state waiver. *Id.* § 6297(f)(3)(B). The Appliance Restrictions do not meet this requirement, because they prohibit in many instances the use of gas appliances that meet federal energy efficiency standards.

75. The third requirement is that "[t]he credit to the energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding [the federal EPCA standards in section 6295] is on a one-for-one equivalent energy use or equivalent cost basis." *Id.* § 6297(f)(3)(C). The Appliance Restrictions do not meet this requirement, because they do not give credit

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 21
Case No.

132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

"on a one-for-one equivalent energy use . . . basis" for products that are more efficient than the federal standards require. In fact, Sections C403.1.4, C404.2.1, R403.13, and Tables C407.2 and R405.2(1) in many instances ban the use of EPCA-covered consumer products.

76. The fifth requirement is that "[i]f the code sets forth one or more optional combinations of items which meet the energy consumption or conservation objective, for every combination which includes a covered product the efficiency of which exceeds [federal energy efficiency standards for consumer products], there also shall be at least one combination which includes such covered product the efficiency of which does not exceed such standard or level by more than 5 percent, ***except that at least one combination shall include such covered product the efficiency of which meets but does not exceed such standard***." *Id.* § 6297(f)(3)(E). Here, the Appliance Restrictions do not contain any combination where builders can install EPCA-covered gas space heating and water heating appliances that meet applicable EPCA efficiency standards.

**The Appliance Restrictions Do Not Qualify for EPCA Preemption Exemption for Industrial Appliances**

77. Similar to the consumer product standards, EPCA contains only limited exceptions to the default rule of preemption of state regulations concerning the energy use or efficiency of industrial appliances. 42 U.S.C. § 6316(b)(2)(B).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 22
Case No.
132285.0009/9391455.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

78.  To avoid preemption, a state building code regulation must "not require that the energy efficiency of such product exceed the applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1" *Id.* § 6316(b)(2)(B)(i).

79. The Appliance Restrictions do not meet this requirement, because in many instances they ban EPCA-covered industrial appliances, even when they meet the efficiency standards in ASHRAE/IES Standard 90.1.

## VI.   CAUSE OF ACTION

### <u>COUNT ONE</u>: FEDERAL PREEMPTION BY THE ENERGY POLICY AND CONSERVATION ACT

80. Plaintiffs re-allege the preceding paragraphs as though set forth fully herein.

81.  The Appliance Restrictions concern the energy efficiency and energy use of appliances in newly constructed buildings, including consumer and industrial appliances covered by EPCA.

82. The Appliance Restrictions do not fall within the exceptions to preemption in EPCA because:

    a.  They do not permit builders to select items whose combined energy efficiencies meet an objective for total energy consumption but rather require use of a particular category of items (such as heat pumps);

    b.  They do not give credit on a one-for-one basis for all appliances whose energy efficiency exceeds the federal standards, insofar as they give no

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 23
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

132285.0009/9391455.1

1      credit for (and indeed ban) the use of EPCA-covered natural gas

2      appliances, no matter their efficiency; and/or

3    c. They ban EPCA-covered natural gas appliances, even when they meet

4      the federal efficiency standards.

5  83. The Appliance Restrictions of the Washington State Energy Code are therefore

6 preempted by the federal EPCA.

7  84. There is no set of circumstances under which the Appliance Restrictions would

8 be valid.

9  85. There is no plain, speedy, and adequate remedy at law to protect the rights of

10 Plaintiffs. Plaintiffs will be irreparably and substantially harmed if the Appliance

11 Restrictions become effective and are enforced.

12  86. There will be no significant harm to Defendant from an injunction, because

13 Defendant has no legitimate interest in enforcing invalid regulations. The balance of

14 harms thus favors injunctive relief.

15  87. An injunction is also in the public interest. The public interest is not served by

16 enforcing invalid regulations. Moreover, EPCA embodies a strong public interest in

17 the uniform, national regulation of energy conservation and use policy, which is

18 undermined by conflicting state regulation of these matters, as found in the Appliance

19 Restrictions.

20

21

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 24
Case No.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 Fax: 206.223.7107

88. Plaintiffs accordingly request that the Court declare that the Appliance Restrictions are preempted by EPCA and enjoin Defendant from enforcing the preempted Appliance Restrictions.

## VII.   PRAYER FOR RELIEF

89. WHEREFORE, Plaintiffs pray for relief as follows:

90. For a permanent injunction enjoining Defendant from enforcing or attempting to enforce the Appliance Restrictions;

91. For a declaratory judgment, pursuant to 28 U.S.C. § 2201(a) and § 1331, that the Appliance Restrictions are preempted by federal law because they concern the energy use of appliances covered by EPCA and are therefore void and unenforceable;

92. For costs of this suit, including reasonable attorney's fees; and

93. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

May 22, 2023.

LANE POWELL PC

*/s/ Callie A. Castillo*
Callie A. Castillo, WSBA No. 38214
Devon J. McCurdy, WSBA No. 52663
Angela Foster, WSBA No. 52269
Daniel Miller, WSBA No. 56810
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98111-9402
Telephone:  206.223.7000
castilloc@lanepowell.com

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 25
Case No.

132285.0009/9391455.1

1    mccurdyd@lanepowell.com
     fostera@lanepowell.com (*admission to Eastern District of Washington forthcoming*)
2    millerd@lanepowell.com (*admission to Eastern District of Washington forthcoming*)

3    *Counsel for the Homeowners, Builders, and Suppliers*

4    /s/ Francesca Eick
     BAKER BOTTS L.L.P.
5    Francesca Eick (WA Bar No. 52432)
     401 S 1st, Suite 1300
6    Austin, TX 78704
     Telephone:  512-322-2672
7    francesca.eick@bakerbotts.com

8    Megan H. Berge (DC Bar No. 98371) (*pro hac vice application forthcoming*)
     Thomas Jackson (DC Bar No. 384708) (*pro hac application forthcoming*)
9    Scott Novak (DC Bar No. 1736274) (*pro hac application forthcoming*)
     700 K Street NW
10   Washington, D.C. 20001
     Telephone:  202-639-1308
11   megan.berge@bakerbotts.com
     thomas.jackson@bakerbotts.com
12   scott.novak@bakerbotts.com

13   *Counsel for the Utilities*

14

15

16

17

18

19

20

21
     COMPLAINT FOR DECLARATORY AND
     INJUNCTIVE RELIEF - 26
     Case No.

132285.0009/9391455.1