LANE POWELL PC
Callie A. Castillo, WSBA No. 38214
Devon J. McCurdy, WSBA No. 52663
Angela Foster, WSBA No. 52269
Daniel Miller, WSBA No. 56810
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98111-9402
Telephone:  206.223.7000
Facsimile:  206.223.7107
castilloc@lanepowell.com
mccurdyd@lanepowell.com
fostera@lanepowell.com (*admission to Eastern District of Washington forthcoming*)
millerd@lanepowell.com (*admission to Eastern District of Washington forthcoming*)
*Counsel for the Homeowners, Builders, and Suppliers*

BAKER BOTTS L.L.P.
Megan H. Berge (DC Bar No. 983714) (*pro hac vice*)
Thomas Jackson (DC Bar No. 384708) (*pro hac vice*)
Scott Novak (DC Bar No. 1736274) (*pro hac vice admission pending*)
700 K Street NW
Washington, D.C. 20001
202-639-1308
megan.berge@bakerbotts.com
thomas.jackson@bakerbotts.com
scott.novak@bakerbotts.com

Francesca Eick (WA Bar No. 52432)
401 S 1st, Suite 1300
Austin, TX 78704
512-322-2672
francesca.eick@bakerbotts.com
*Counsel for the Utilities*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JAMON RIVERA, an individual; INLAND NW AGC, a membership organization; SPOKANE HOME BUILDER'S ASSOCIATION, a nonprofit corporation; WASHINGTON STATE ASSOCIATION OF UA PLUMBERS, PIPEFITTERS AND HVAC/R SERVICE TECHNICIANS, a labor organization; CONDRON HOMES LLC, a limited liability company; PARAS HOMES LLC, a limited liability company; GARCO CONSTRUCTION INC., a for-profit corporation, NATIONAL PROPANE GAS ASSOCIATION, a national trade association, CITIZEN ACTION DEFENSE FUND, a nonprofit corporation; AVISTA CORPORATION; CASCADE NATURAL GAS CORPORATION; AND NORTHWEST NATURAL GAS COMPANY, | No.  1:23-cv-03070-SAB  **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**  With Oral Argument: July 3, 2023 or To Be Determined by Court |
| Plaintiffs, | |
| v. | |
| WASHINGTON STATE BUILDING CODE COUNCIL, | |
| Defendant. | |

**Table of Contents**

**Page**

I. INTRODUCTION ............................................................................. 1

II. RELEVANT BACKGROUND.......................................................... 2

III. LEGAL STANDARD .................................................................... 4

IV. ARGUMENT .................................................................................. 4

      A.     Plaintiffs are likely to succeed on the merits because the Appliance Restrictions ban EPCA-covered products. ......... 4

            1.    Federal energy standards exist for the restricted products. ............................................................... 5

            2.    The Appliance Restrictions concern energy use of these products.......................................................... 5

            3.    The Appliance Restrictions are not exempt from preemption................................................................. 7

      B.     The Appliance Restrictions will irreparably harm Plaintiffs. .... 7

      C.     Equity and the public interest strongly weigh in Plaintiffs' favor.......................................................................... 9

V. CONCLUSION ............................................................................. 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Air Conditioning, Heating & Refrigeration Inst.v. City of Albuquerque,*
2008 WL 5586316 (D.N.M. Oct. 3, 2008) ..........................................................5

*Air Conditioning, Heating & Refrigeration Inst. v. City of Albuquerque,*
835 F. Supp. 2d 1133 (D.N.M. 2010) ...................................................6

*Ariz. Dream Act Coal.v. Brewer,* 757 F.3d 1053, 1068 (9th Cir. 2014)..................7

*Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council,*
683 F.3d 1144 (9th Cir. 2012) .....................................................7

*BNSF Railway Co. v. Cal. State Bd. Of Equalization,*
2016 WL 6393507 (N.D. Cal. Oct. 28, 2016) ....................................7

*Cal. Rest. Ass'n, v. City of Berkeley,*
65 F.4th 1045 (9th Cir. 2023) ............................................1, 6

*Disney Enters., Inc.v. VidAngel, Inc.,* 869 F.3d 848 (9th Cir. 2017)......................4

*Hernandez v. Sessions,*
872 F.3d 976 (9th Cir. 2017) ...........................................4

*League of Women Voters of the U.S. v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) ........................................10

*Washington v. DeVos,*
481 F. Supp. 3d 1184 (W.D. Wash. 2020) .......................................10

STATUTES

42 U.S.C. § 6201 ............................................................1

42 U.S.C. § 6295(e) ...........................................................5

42 U.S.C. § 6295(f) ...........................................................5

42 U.S.C. § 6297(c) ...........................................................5

42 U.S.C. § 6297(c)(3).................................................................7

42 U.S.C. § 6297(f)(3).................................................................7

42 U.S.C. § 6313(a)....................................................................5

42 U.S.C. § 6316(b)(2)(A)...........................................................5

42 U.S.C. § 6316(b)(2)(B)(i).......................................................7

RCW 19.27A.025(3)................................................................10

RCW 19.27A.045......................................................................10

RCW 34.05.350(2).....................................................................3

**OTHER AUTHORITIES**

David Iaconangelo, *Washington state hits the brakes on landmark gas ban*, E&E
    News (May 25, 2025),
    https://subscriber.politicopro.com/article/eenews/2023/05/25/washington-state-
    hits-the-brakes-on-landmark-gas-ban-00098576..................................................1

Declaration of Brian L. Robertson.............................................9

Declaration of Cheryl Stewart ....................................................8

Declaration of George Paras........................................................8

Declaration of Grant Forsyth......................................................9

Declaration of John Frankel........................................................9

Declaration of Kim Rush.............................................................9

Declaration of Robb Koschalk....................................................9

Declaration of Ty Jennings..........................................................8

All other declarations attached to this motion are incorporated by reference.

# I. **INTRODUCTION**

Plaintiffs challenge recently adopted provisions of the Washington State Energy Code ("Code") that ban the use of appliances covered by the Energy Policy and Conservation Act, 42 U.S.C. § 6201 *et seq.* ("EPCA"). The U.S. Court of Appeals for the Ninth Circuit has confirmed such bans are preempted by federal law. *See Cal. Rest. Ass'n,* 65 F.4th at 1048 ("*Berkeley*"). In response to the *Berkeley* decision, Defendant Washington State Building Code Council ("Council") announced its intent to temporarily stay the Code's effective date, until October 29, 2023, while it considers amendments to address *Berkeley*. The author of the temporary stay, Council Member and Energy Code Technical Advisory Group Chair Kjell Anderson, acknowledged that "We need to comply with [the *Berkeley*] ruling or else leave ourselves and our building officials open to legal risk."[1]

This action comes too late for Plaintiffs. Plaintiffs are being harmed by the Codes *now*, and the Council has no legal mechanism to stop the Codes from going into effect unmodified on October 29, 2023. By statute, the Council cannot renew the temporary stay, and amendments to the Code cannot take effect before the end of the next legislative session, March 2024, at the soonest. Lacking any other avenue

---

[1] David Iaconangelo, *Washington state hits the brakes on landmark gas ban*, E&E NEWS, (May 25, 2025), https://subscriber.politicopro.com/article/eenews/2023/05/25/washington-state-hits-the-brakes-on-landmark-gas-ban-00098576.

1  for relief, Plaintiffs ask this Court to preliminarily enjoin the challenged Code

2  provisions because they are preempted by EPCA and causing irreparable harm that

3  will only escalate once the Codes are effective.

## II.  RELEVANT BACKGROUND

5  The Council adopted amendments to the Code designed to ban or substantially

6  limit the use of gas appliances covered by EPCA. Adopted in two stages in 2022,

7  the amendments ban the use of EPCA-covered appliances in commercial buildings

8  ("Commercial Provisions") and in residential buildings ("Residential Provisions").

9  Both the Commercial and Residential Provisions provide a "prescriptive

10  compliance" pathway and a "total building performance compliance" pathway. The

11  prescriptive compliance pathway requires that each element of a building meet a

12  minimum acceptable standard, whereas the performance pathway requires modeling

13  the building as a whole to predict energy usage and assess compliance with energy

14  use and carbon emissions targets. Buildings must comply with one of the two

15  pathways. Section C401.2; Section R401.2.

16  The Commercial Provisions' prescriptive and total building performance

17  compliance pathways generally ban the use of gas appliances for heating,

18  ventilation, and air conditioning ("HVAC") systems and water heating systems.

19  Sections C403.1.4, C404.2.1, and Table C407.2. Similarly, the Residential

20  Provisions' prescriptive and total building performance compliance pathways

generally require that water heating shall be provided by an electric or gas heat pump system, thereby banning gas-fired water heating systems. Section R403.5.7, Table R405.2(1). The Residential Provisions' prescriptive compliance pathway likewise requires that space heating shall be provided by an electric or gas heat pump system, thereby banning other heating systems, such as gas-fired furnaces. Section R403.13.

The Code generally imposes the above restrictions (collectively, the "Appliance Restrictions") on gas appliances in newly constructed buildings, but the restrictions also apply to alterations of or additions to existing buildings. *See, e.g.,* Sections C503.4.6 and R503.1.2.

On May 24, 2023 (two days after Plaintiffs' Complaint was filed), the Council voted to take steps on June 30, 2023, to stay the Code's effective date for 120 days, thus moving the effective date of the Code to October 29, 2023. The Council also voted to initiate new rulemaking to revise the Code in an attempt to better insulate it from legal challenges. Nevertheless, the Code will go into effect on October 29— unmodified— because the Council lacks the statutory authority to stay the new Code beyond that date, *see* RCW 34.05.350(2) ("Identical or substantially similar emergency rules may not be adopted in sequence . . ."), or to modify its provisions before the Code must go into effect, *see* RCW 19.27A.045 ("Decisions to amend the Washington state energy code for residential structures…shall not take effect before the end of the regular legislative session in the next year."); RCW 19.27A.025(3)

("Decisions to amend the Washington state energy code for new nonresidential buildings… shall not take effect before the end of the regular legislative session in the next year.").

## III.  LEGAL STANDARD

"A party can obtain a preliminary injunction by showing that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *Disney Enters., Inc.,* 869 F.3d at 856 (internal quotation marks and citations omitted). Under the "sliding scale" approach adopted by the Ninth Circuit, these elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Hernandez,* 872 F.3d at 990 (internal quotation marks and citations omitted).

## IV.  ARGUMENT

**A.      Plaintiffs are likely to succeed on the merits because the Appliance Restrictions ban EPCA-covered products.**

EPCA preempts the Appliance Restrictions, which impermissibly regulate the energy use of EPCA-covered consumer and commercial gas appliances by banning such energy use altogether. Under EPCA, once the U.S. Department of Energy ("DOE") sets a federal energy conservation standard for any consumer "covered product," "no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product," unless

certain exemptions apply. *See* 42 U.S.C. § 6297(c). Similarly, for commercial and industrial products, the federal standards shall "supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established pursuant to such section." *Id.* § 6316(b)(2)(A).

These preemption provisions apply if three conditions are met. First, federal energy conservation standards must exist for the products at issue. Second, the regulation at issue must concern the energy efficiency, energy use, or water use of the EPCA-covered products. Third, EPCA's statutorily defined exemptions to preemption must not apply. As discussed below, all three conditions are met here.

### 1.    Federal energy standards exist for the restricted products.

The first condition is easily met. Federal energy conservation standards exist for the products banned by the Appliance Restrictions, which include gas space and water heating products. *See* 42 U.S.C. §§ 6295(e), (f), 6316(b)(2)(A), 6313(a). Thus, the Appliance Restrictions ban EPCA-covered products.

### 2.    The Appliance Restrictions concern energy use of these products.

The second condition is also met because the Appliance Restrictions concern the energy use of these EPCA-covered products.

In the context of EPCA preemption, terms such as "concerning" "express a broad pre-emptive purpose." *Air Conditioning, Heating & Refrigeration Inst.,* 2008 WL 5586316, at *7. Thus, the "plain language of [EPCA] makes clear that Congress

1  intended the preemption to be broad in scope." *Air Conditioning, Heating &*

2  *Refrigeration Inst.*, 835 F. Supp. 2d at 1136. EPCA's legislative history also shows

3  Congress meant to "preempt[] state law under most circumstances" to address "the

4  problem of a growing patchwork of differing State regulations which would

5  increasingly complicate [appliance manufacturers'] design, production and

6  marketing plans." *Id.* at 1136-37 (quotation omitted).

7       The Appliance Restrictions concern the energy use of EPCA-covered

8  products because the restrictions ban the installation of such products altogether. As

9  such, the Appliance Restrictions impermissibly require the energy use of EPCA-

10  covered products to be zero rather than at levels established by DOE under ECPA.

11      These are exactly the type of regulations concerning energy use that courts

12  have held EPCA preempts. The Ninth Circuit's recent decision in *Berkeley* is

13  dispositive. In holding that EPCA preempts Berkeley's building code ordinance

14  banning gas piping in newly constructed buildings because the ordinance concerned

15  the energy use of EPCA-covered products, the court found that "***EPCA would no***

16  ***doubt preempt an ordinance that directly prohibits the use of covered natural gas***

17  ***appliances in new buildings***." *Berkeley*, 65 F.4th at 1056 (emphasis added). As the

18  Council itself has implied, that is exactly what the Appliance Restrictions do here,

19  making this case an even more clearcut instance of EPCA preemption than *Berkeley*,

20  which involved an indirect ban on EPCA-covered products rather than a direct ban.

### 3.    The Appliance Restrictions are not exempt from preemption.

The final condition is met because the Appliance Restrictions fail to qualify for EPCA's exemptions from preemption. To avoid preemption, a state regulation of EPCA-covered products must meet specific requirements. 42 U.S.C. §§ 6297(c)(3), (f)(3), 6316(b)(2)(B)(i). The Appliance Restrictions fail to meet a number of these requirements because, in short, they do not allow builders to select EPCA-covered gas appliances. Compl. ¶¶ 72–79; *see Bldg. Indus. Ass'n of Washington*, 683 F.3d at 1145 ("Section 6297(f)(3)(B) is violated when the code requires a builder, as a matter of law, to select a particular product or option."). Accordingly, the Appliance Restrictions cannot escape preemption under EPCA.

In light of the above, Plaintiffs have demonstrated a strong likelihood of success on the merits that EPCA preempts the Appliance Restrictions.

## B.    The Appliance Restrictions will irreparably harm Plaintiffs.

The Appliance Restrictions are harming Plaintiffs now, and this harm will escalate once the Codes are effective. Without a preliminary injunction from this Court, the Appliance Restrictions will become effective in mere months, even if the Council follows through on its plan to stay implementation of the Code for 120 days. The harm to Plaintiffs is irreparable because there is "no adequate legal remedy, such as an award of damages," *Ariz. Dream Act Coal.,* 757 F.3d at 1068; *see also, BNSF*

*Railway Co.*, 2016 WL 6393507, to be had from the Council, and invalidation of the restrictions later cannot undo the harm that has been and will be done.

The Appliance Restrictions are harming homeowners, builders, and suppliers who are being forced to make costly changes to their building and infrastructure plans now in order to account for the impending restrictions on certain types of appliances and energy use. The Appliance Restrictions are already causing delays to projects, *see* Stewart Decl. ¶ 7, and will unnecessarily increase the costs of building homes and commercial buildings, as well as ownership and maintenance, by eliminating effective and available energy appliances for heating water and ambient air, *see, e.g.*, Paras Decl. ¶¶ 3–8. The increased building costs—which are not accompanied by an equivalent increase in the value of a home—pose a dilemma for homebuilders, who can either absorb the increased costs (with resulting lower profit margins) or pass the costs on to customers and risk pricing some potential customers out of the market. *See* Stewart Decl. ¶¶ 5–6.

The Appliance Restrictions are likewise causing irreparable harm to local utilities and other service providers, as would-be customers are deciding not to extend gas service to new developments in anticipation of the enforcement of the Appliance Restrictions. *See, e.g.*, Jennings Decl. ¶ 8. These customer losses would remain even if the Appliance Restrictions were later overturned, because retrofitting costs for switching from electric to gas appliances would be too high for many

customers. *See, e.g.,* Koschalk Decl. ¶ 8. Additionally, in cases where the original developer has chosen not to install backbone gas infrastructure because of the Appliance Restrictions, it will be cost-prohibitive for a single customer to extend the gas system to their home or commercial building. *Id.* at ¶ 9. The loss of would-be customers and the infrastructure to support them now irreparably harms existing utility customers long term, because there will be fewer customers to share the costs of maintaining the gas supply system. Rush Decl. ¶¶ 7–8. The local utilities and service providers anticipate that these would-be customer losses will only escalate once the Appliance Restrictions are effective and curtail customer growth. *See, e.g.,* Frankel Decl. ¶¶ 6–9, Forsyth Decl. ¶¶ 5–8, Robertson Decl. ¶¶ 6–12.[2]

**C.    Equity and the public interest strongly weigh in Plaintiffs' favor.**

Here, the balance of the equities and public interest strongly favor preliminarily enjoining the Appliance Restrictions.

First, the Council has no public interest in maintaining state regulations preempted by federal law. "There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of the U.S.,* 838 F.3d at 12 (D.C. Cir.

---

[2] Plaintiffs incorporate all other declarations attached to this motion by reference.

2016) (internal quotation marks and citations omitted); *Washington*, 481 F. Supp. 3d at 1197. As set forth above, the Council has at least implicitly acknowledged that the Appliance Restrictions do not withstand EPCA preemption through its initial steps to delay the Code just two days after Plaintiffs filed their Complaint.

Second, if this Court allows the Appliance Restrictions to take effect, the public interest in maintaining affordable housing and energy services will be harmed. Builders and homeowners will face added costs, while local utilities and service providers will face a certain, irreparable loss of their customer base that will also harm Washingtonian families and businesses by causing gas rates to increase. By contrast, preserving the status quo will not harm the Council or the public, and enjoinment of the Appliance Restrictions will cost the Council nothing.

Finally, the public interest favors granting a preliminary injunction because it is the *only* remedy available to prevent the unlawful Code provisions from taking effect this year. Even if the Council removes the provisions from the Code, such amendments could not take effect until next year. RCW 19.27A.045; RCW 19.27A.025(3). As such, a preliminary injunction from this Court is the Plaintiffs' only hope to abate the ongoing harm caused by the Appliance Restrictions.

## V. <u>CONCLUSION</u>

For the above reasons, Plaintiffs respectfully request that the Court preliminarily enjoin the Appliance Restrictions.

1      DATED: June 1, 2023

2                                    LANE POWELL PC

3                                    By: *s/Callie A. Castillo*
                                          Callie A. Castillo, WSBA No. 38214
4                                         Devon J. McCurdy, WSBA No. 52663
                                          Angela Foster, WSBA No. 52269
5                                         Daniel Miller, WSBA No. 56810
                                          1420 Fifth Avenue, Suite 4200
6                                         P.O. Box 91302
                                          Seattle, Washington 98111-9402
7                                         Telephone:  206.223.7000
                                          castilloc@lanepowell.com
8                                         mccurdyd@lanepowell.com
                                          fostera@lanepowell.com
9                                         millerd@lanepowell.com
                                     *Counsel for the Homeowners, Builders, and*
10                                   *Suppliers*

11                                   BAKER BOTTS L.L.P.

12                                   By: */s/ Francesca Eick*
                                     Megan H. Berge (DC Bar No. 98371)
13                                   Thomas Jackson (DC Bar No. 384708)
                                     Scott Novak (DC Bar No. 1736274)
14                                   700 K Street NW
                                     Washington, D.C. 20001
15                                   Telephone:  202-639-1308
                                     megan.berge@bakerbotts.com
16                                   thomas.jackson@bakerbotts.com
                                     scott.novak@bakerbotts.com
17
                                     Francesca Eick (WA Bar No. 52432)
18                                   401 S 1st, Suite 1300
                                     Austin, TX 78704
19                                   Telephone:  512-322-2672
                                     francesca.eick@bakerbotts.com
20                                   *Counsel for the Utilities*

# CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

Dated: June 1, 2023

Respectfully submitted,

*s/Callie A. Castillo*
Callie A. Castillo, WSBA No. 38214
Devon J. McCurdy, WSBA No. 52663
Angela Foster, WSBA No. 52269
Daniel Miller, WSBA No. 56810
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98111-9402
Telephone:  206.223.7000
castilloc@lanepowell.com
mccurdyd@lanepowell.com
fostera@lanepowell.com
millerd@lanepowell.com