UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAMON RIVERA, et al.,                  ) Case No. 1:23-cv-3070-SAB
                                       )
        Plaintiffs,                    ) July 18, 2023
                                       ) Yakima, Washington
v.                                     )
                                       ) Motion for Preliminary
WASHINGTON STATE BUILDING CODE         ) Injunction Hearing
COUNCIL, et al.,                       )
                                       ) Pages 1 to 46
        Defendants.                    )
                                       )
CLIMATE SOLUTIONS, et al.,             )
                                       )
        Defendant-Intervenors.         )


BEFORE THE HONORABLE STANLEY A. BASTIAN
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiffs:          Megan H. Berge
                             Megan.berge@bakerbotts.com
                             Ronald Scott Novak, Jr.
                             Scott.novak@bakerbotts.com
                             Baker Botts LLP
                             700 K Street NW
                             Washington, DC 20001
                             202-639-1308

                             Callie A. Castillo
                             Castilloc@lanepowell.com
                             Lane Powell, PC
                             1420 Fifth Avenue
                             Suite 4200
                             PO Box 91302
                             Seattle, WA  98111
                             206-223-7145

                             Brook L. Cunningham
                             Blc@randalldanskin.com
                             Randall & Danskin PS
                             601 W Riverside Avenue
                             Suite 1500
                             Spokane, WA  99201
                             509-624-2528

KIMBERLY J. ALLEN, CRR, RMR, RPR, CSR
OFFICIAL COURT REPORTER

2

For the Defendants:              William D. McGinty
                                 William.mcginty@atg.wa.gov
                                 R. July Simpson
                                 July.Simpson@atg.wa.gov
                                 Washington State Attorney
                                 Generals Office
                                 Complex Litigation
                                 7141 Cleanwater Drive SW
                                 Olympia, WA 98504
                                 360-709-6470


For                              Jan E. Hasselman
Defendant-Intervenors:           Jhasselman@earthjustice.org
                                 Noelia Gravotta
                                 Ngravotta@earthjustice.org
                                 Earthjustice
                                 810 3rd Avenue
                                 Suite 610
                                 Seattle, WA  98104
                                 206-343-7340


Official Court Reporter:         Kimberly J. Allen, CCR #2758
                                 United States District Courthouse
                                 P.O. Box 685
                                 Richland, Washington 99352
                                 (509) 943-8175

Proceedings reported by mechanical stenography; transcript produced by computer-aided transcription.

3

## INDEX

**Proceedings:**                                              **Page**

Argument by Ms. Berge                          6
Argument by Ms. Castillo                       17
Argument by Mr. McGinty                        24
Argument by Mr. Hasselman                      34
Rebuttal Argument by Ms. Berge                 38
Rebuttal Argument by Ms. Castillo              40

## WITNESS INDEX

**Plaintiff Witness:**                                        **Page**

None

***** 

**Defense Witnesses:**                                        **Page**

None

## EXHIBITS ADMITTED

**Plaintiff**
**Number**        **Description**                              **Page**

None

**Defense**
**Number**        **Description**                              **Page**

None

## GENERAL INDEX

                                                             **Page**

Reporter's Certificate............................46

(July 18, 2023; 10:05 a.m.)

THE COURTROOM DEPUTY:  All rise.

(Call to Order of the Court.)

THE COURT:  Good morning.  Please be seated.

THE COURTROOM DEPUTY:  We have Jamon Rivera, et al. v. Washington State Building Code Council, et al., and then the intervenors, Climate Solutions, et al.; Case No. 1:23-cv-3070-SAB.  Time set for a motion hearing.

Counsel, would you please make your appearances for the record.

MS. BERGE:  Good morning, Your Honor.  Counsel Megan Berge for the utility petitioners.

THE COURT:  Good morning, Counsel.

MR. NOVAK:  Scott Novak for the utility petitioners, Your Honor.

THE COURT:  Good morning.

MS. CASTILLO:  Callie Castillo for the coalition of the homebuilders, the builders, and the suppliers.

THE COURT:  Good morning.

MR. CUNNINGHAM:  Brook Cunningham for the utility petitioners, Your Honor.

THE COURT:  Good morning.

MR. McGINTY:  William McGinty for the State defendants.

MS. SIMPSON:  July Simpson for the State defendants.

MR. HASSELMAN:  Your Honor, Jan Hasselman for the

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB  5*
*Motion for Preliminary Injunction Hearing/July 18, 2023*

intervenors.

MS. GRAVOTTA:  Noelia Gravotta for intervenors.

THE COURT:  I kept saying "good morning," so good morning to all of you.  Thank you for coming to Yakima.

We're here today to take argument and consider the plaintiffs' motion for a preliminary injunction.

Over the last few days there had been a few requests to file, I think, surreplies.  I think I've granted all of those requests.  They've all been filed.  So we'll start with the argument.

Now, I was told that for plaintiff we'll hear argument from Ms. Berge and also Ms. Castillo.

Is that correct?

MS. BERGE:  Yes, Your Honor.  In the interest of judicial efficiency, we decided to split the topics that we'll present, Your Honor.

THE COURT:  Okay.  And then for the State defendant we'll take argument from Mr. -- is it McGlinty or McGinty?

MR. McGINTY:  McGinty.

THE COURT:  McGinty.

MR. McGINTY:  G-I-N-T-Y.

THE COURT:  Thank you.

And then Mr. Hasselman wants to make argument on behalf of the intervenors.

Is that correct?

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

MR. HASSELMAN:  That's right.  Thank you.

THE COURT:  All right.  I have another hearing at 11:00.  You've got my time and attention until then.  So we will start with the plaintiff.

Ms. Berge, is that you?

MS. BERGE:  I'm up first, Your Honor.

THE COURT:  Okay.  So if we get close to 10:30 with the plaintiff, I'll probably alert you, because I do think we need to give the defense time to respond.  But other than that, I don't intend to give you time signals, unless you want them.

MS. BERGE:  I brought a watch.

THE COURT:  Okay.  Go ahead.

MS. BERGE:  Your Honor, I do have slides today.

THE COURT:  All right.  Thank you.

MS. BERGE:  I've provided to both counsel, and I provided a hard copy.

THE COURT:  Thank you.

MS. BERGE:  All right.  Let's see how our technology is doing.

THE COURT:  I'm sorry?

MS. BERGE:  I said let's see how our technology is doing.

THE COURT:  Oh, okay.  It usually does pretty well.

MS. BERGE:  Good morning, Your Honor.

THE COURT:  Good morning.

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB  7*
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Ms. Berge*

MS. BERGE:  As I noted, I'm counsel Megan Berge for the utility petitioners.  I'm joined today by Ms. Castillo.  We are dividing the argument up today where I will address the merits, my clients' irreparable harm, as well as defendants' arguments regarding ripeness and standing.  Ms. Castillo will present her clients' irreparable harm, the argument about the balance of equities and public interest, and also address the Eleventh Amendment.

And I note this, Your Honor, because if there is a place you would like to start --

THE COURT:  Do we really need to address the Eleventh Amendment today?  I mean, that kind of goes to whether you have standing to bring the case, and that goes to a motion to dismiss, not necessarily a preliminary injunction.  Just since we've got limited time, do we really need to talk about the Eleventh Amendment?

MS. BERGE:  No, Your Honor.

THE COURT:  Okay.

MS. BERGE:  We're happy to move forward.

THE COURT:  All right.

MS. BERGE:  So with that, let's get started on the likelihood of success on the merits.

THE COURT:  All right.

MS. BERGE:  All right.  So we believe we have a strong case on the likelihood of success on the merits, Your Honor.

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

EPCA has -- for -- EPCA preemption has three elements.  The three elements are likeli -- are that there's an energy conservation standard that exists -- that's how they call them EPCA-covered appliances -- that there's a regulation at issue that concerns energy use, energy efficiency, or water use of that product; and EPCA's statutorily defined exemptions to preemption are not met.

Here, there's no dispute about the first and third factors.  And regarding the second factors, the Ninth Circuit recently issued an opinion in *CRA v. Berkeley* that is dispositive of the case at issue here, because the regulations do concern the energy use of covered appliances.

I want to highlight just two findings in the *Berkeley* case.  One, Your Honor, is that EPCA's preemption provision encompasses building codes that regulate natural gas use by covered products, and that EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings.

Given the relative strength of plaintiffs' arg -- following the issuance of the *Berkeley* opinion, Your Honor, a little bit more than -- what? -- a month later, the SBC voted to adopt an emergency ruling delaying the code, as well as initiating rule-making in light of the *Berkeley* rule-making [sic].

Your Honor, in the brief, defendants effectively

acknowledge that their regulations cannot survive *Berkeley* and are working to amend them in light of that ruling.

Given the relative strength of the merits argument here, defendants have attempted to focus the Court on procedural issues like ripeness and standing, but it's of no avail, Your Honor.  Plaintiffs have established standing, which is a relatively low bar, and the case here is ripe for review.  I'm going to go ahead and start with standing.

To satisfy standing, as all the lawyers here know, there's three elements that you have to meet:  Injury in fact that's fairly traceable to defendants' conduct and would likely be redressed by -- (telephone interruption)

You know, we can do it to a beat.

THE COURT:  Oh, is that you?

MS. BERGE:  Definitely not me.

THE COURT:  Oh, okay.

MS. BERGE:  No devices.

THE COURT:  Oh.  I thought it was part -- okay.  Excuse me.  I thought:  Wow, that's the first time I've seen dancing in --

MS. BERGE:  I was going to say, you know, whatever wakes everybody up this morning.

THE COURT:  Go ahead.

MS. BERGE:  Building codes excite me, but I know that's not the case for everyone.

So as I was saying, there's just three elements here, injury in fact, fairly traceable, and likely to be redressed by an action by the Court.  So the standard that we have to meet, Your Honor, at this stage is that the factual allegations of injury resulting from conduct -- from the defendants' conduct may suffice.

I would direct Your Honor to Paragraphs 43, 44, 47, and 48 of our complaint.  They have alleged an injury in fact that's fairly traceable and redressable by -- fairly traceable to defendants' conduct and is redressable by this Court.  In the interest of time, I will not belabor these but just want to highlight that, you know, homeowners, businesses, and residential and commercial builders are prohibited by the regulations from choosing gas appliances, in many instances. They're being forced to make costly changes to their buildings and infrastructure plans now, today, in order to account for Washington State's pending restrictions on certain types of appliances.  And the utilities have been harmed through erosion of their customer base and the permanent loss of new customers over time.  This effectively is a cap on the growth of the utility industries' business.

So even though --

THE COURT:  Well, one might say climate change is a cap on the growth of the utility industries' basis, which has nothing to do with the regulations.

MS. BERGE:  Is that a question, Your Honor?

THE COURT:  No.  You can proceed.

MS. BERGE:  Thank you, Your Honor.

THE COURT:  All right.

MS. BERGE:  So in those terms, Your Honor, where it comes to standing, the mere allegations are sufficient to establish standing.  However, we've gone further here because we have submitted declarations, and these declarations do detail concrete and particularized actual and -- actual harm.  This is not hypothetical or conjectural.

Just highlighting a few of them here, we start with the Robertson declaration, which includes comments on Cascade Natural Gas's recent integrated research planning document. It's a document that utilities have to submit to the Utilities and Transportation Commission that says:  Here's how much gas we're going to need, here's our demand forecast, and here is how we are going to meet that demand.  Staff recently instructed Cascade that in future filings, that recent building code changes are substantially reducing the ability to install natural gas furnaces in some new buildings.

Also highlighting the Jennings' declaration; details how would-be customers are no longer planning to use gas appliances because of and specifically because of the appliance restrictions.  Similarly, the Rush declaration describes harm on the cap on growth.

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 12
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Ms. Berge*

And, Your Honor, to your point earlier, another way that we will grow is through alternative measures.  These appliances can combust other molecules.  Just for the record, there's more molecules that can go through our infrastructure other than natural gas.

THE COURT:  Okay.

MS. BERGE:  And finally, the Koschalk declaration, which is -- talks about a specific instance in which a developer in Spokane started a multiphase development process using natural gas but then switched to fully electrifying, in anticipation of the appliance restrictions becoming in effect.

So based on the pleadings and this evidence, Your Honor, plaintiffs more than meet the modest showing that is necessary to establish standing at this stage of the proceedings, so I am going to move next on to ripeness.

In terms of ripeness, Your Honor, the seminal case is, of course, *Abbot Laboratories v. Gardner*.  This has been described as a twofold aspect, requiring the Court to establish both -- evaluate both the fitness of the issues for judicial decision and the hardship to the parties for -- if the Court withholds review.  The Court has described or explained the purpose of this inquiry as being to -- to ensure that there's an administrative decision that has been formalized and its effects are being felt in a concrete way by the challenging parties. And that is the case here, Your Honor.

In terms of the fitness for judicial decision, there has been a final administrative decision that's formalized.  The appliance restrictions are final.  Defendants have taken no action that changes the appliance restrictions.  Even if defendants' claims -- and I want to be clear about this -- even if defendants' claims that the effective date is now October 29th, 2023, is correct, we're still harmed, Your Honor, and the --

THE COURT:  Well, they might change the rules.  That's why they -- that's why they suspended them.  That was my understanding anyway.

MS. BERGE:  They might, Your Honor.

THE COURT:  Yeah.

MS. BERGE:  But that is actually part of the problem here, is the -- you know, we have long lead times.  Our customers have long lead times in which their projects are built and developed.  So the decisions that are happening today about whether to install gas infrastructure, and that infrastructure is the backbone of the natural gas system, so if that infrastructure is not put in at the outset, it is cost-prohibitive to turn around and install it.

So --

THE COURT:  Go ahead.

MS. BERGE:  Okay.  Moving on.  So I just want to be clear that while we do disagree with them about the validity of

their action to move the effective date, the effective date is not what is causing our harm.  It is the actual final regulations, and they are final and prepared for review.

But to be clear, just so there's no confusion, we do disagree with their characterization, Your Honor, that they've lawfully delayed the effective dates; but it is also the case, Your Honor, that we view this question as largely irrelevant in the sense of whether or not this case is ripe for review.

So -- and the reason we feel that way is we are feeling the effects of the appliance restrictions now.  It's not the case that no effects will be felt or no harm will occur until the appliance restrictions go into place.

And, again, I have just a few excerpts from the declarations to highlight.  Ms. Rush, Mr. Jennings, and Mr. Koschalk all explain how they are losing customers now and will continue to do so because of the restrictions, and I already touched on why that matters long-term.  And I wanted to focus the Court in particular on the declaration of Mr. Jennings.  He did attach an e-mail exchange with a would-be customer that was recent.  Mr. Jennings' role -- just to be clear, Mr. Jennings has more certifications than -- I mean, he makes the letters after my name look way brief.  You know, he's a building code specialist, he's a fire marshal, he's been a city plans examiner, he's been a code inspector.  And his role at Cascade today is actually to help customers that are

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 15
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Ms. Berge*

interested in using natural gas or installing natural gas infrastructure, which, again, can carry multiple different types of gas molecules to homes and business as we go forward.

And he had an inquiry come in, again, almost six months ago, Your Honor, almost six months ago by a developer saying: Will I be able to use natural gas in this new building that I'm building?

Mr. Jennings explains the codes coming into effect, and he explains the timeline, and he says, you know, you've got to get all these things -- and if you look at the e-mails, there's actually a list -- that have to be in by June 30th.

And the customer reaches out and he goes: Oh, man, I'm not going to have X thing done by June 30th. Are you sure?

Mr. Jennings confirms. The communication goes silence [sic] for a few months. A couple months later, in May, early May, Mr. Jennings reaches out and says: Hey, how is it going? You know, any chance you're going to make this?

And the developer responds, quote, that -- his tenant because of these issues ended up choosing to use electric heat here instead of natural gas-fired units.

Mr. Jennings promptly asked: Was the choice to fully electrify, quote, due to the upcoming -- the requirements of the upcoming WSEC. That's the Washington State Energy Code.

The developer responds unequivocally yes, and that otherwise their tenant uses natural gas in all their other

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

buildings around the country.

This demonstrates that the harm that plaintiffs are experiencing now is concrete, actual, particularized; not hypothetical, not immaterial.

So moving on to my last topic, Your Honor, so that I can, indeed, let Ms. Castillo have an opportunity to present her issues, we do want -- even though it won't be the Eleventh Amendment, is irreparable harm.

So, Your Honor, I've gone through multiple different declarations this morning.  They do detail our harm substantially.  I am not going to reiterate them here for you again.  But I would note that what constitutes irreparable harm is the fact that the harm cannot be adequately addressed. There's no award of damages that we can receive to remedy our situation.  So if harm continues because a preliminary injunction is not granted, Your Honor, that harm, we have no recourse.

So I am going to, unless there's questions, Your Honor, I am going to cede the floor to Ms. Castillo.

THE COURT:  All right.  Thank you.  I don't have any questions right now, and --

MS. BERGE:  Keep going?

THE COURT:  Keep going, yeah.

MS. BERGE:  Okay.

THE COURT:  Yeah.

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 17
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Ms. Castillo*

MS. BERGE:  All right.

THE COURT:  Ms. Castillo, it was just a question about the Eleventh Amendment.  I didn't mean to take that completely away from you.  If you think that's relevant to the preliminary injunction, I mean, you can make that argument.  That was just a question, just something I'm wondering.

MS. CASTILLO:  So with respect, Your Honor, to the Eleventh Amendment, the State has raised that as going to the merits as why this Court cannot hear this case, period.  We vehemently disagree with that position.  We do note that they have addressed that in their motion to dismiss.  And so unless Your Honor would like to specifically discuss that issue today, I can proceed with the preliminary injunction standards.

THE COURT:  No.  I mean, I think that I understand why it's brought up in relation to the preliminary injunction.  I think I understand it well enough.  I'll let you focus on what you'd like to focus on.

MS. CASTILLO:  Thank you, Your Honor.

THE COURT:  Yeah.

MS. CASTILLO:  So again, I represent the homeowners, builders, and suppliers of gas who are plaintiffs in this action.  And just like the utilities, these homeowners, builders, and suppliers are in the same insufferable position now as they were before the Council began additional rule-making to address their preemption problem.

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 18
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Ms. Castillo*

Our declarations establish that home and commercial building takes months of advance planning, so the actions that they're taking today have to account for the code that is going to be in effect in the future.  And the only code that the State Building Code Council has adopted is the one that is preempted by federal law.  And that establishes the harm that they're occurring because they're having to redo projects in order to address this uncertainty about whether these -- these codes are going to be in effect come October 29th or not.  And they're having customers who are not able to make decisions, are not able to get the -- to plan for the appliances or the gas infrastructure that they want for their projects because the codes that will be in effect by the time that these builders need to pull the permits will have restricted access to those appliances.  That harm is in effect now.

And the State has tried to escape by creating this untenable position of saying that they're considering rules to amend the current code.  But they have taken no steps to --

THE COURT:  How do we know they've taken no steps?  I mean, they've taken one important step, and they've recognized that after they adopted these code amendments, the Ninth Circuit, in a rather surprising decision, but the Ninth Circuit ruled in the *Berkeley* case that there's a preemption issue.  And in response to that the State said:  All right, the rules that we adopted prior to *Berkeley* we're going to put in a suspended

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

fashion, and we're going to consider this Ninth Circuit rule and try to decide how that impacts what the State wants to do, and has every right to try to do.

And so they've taken one important step.  Do we have anything in the record to suggest they've taken anything -- any other steps --

MS. CASTILLO:  No --

THE COURT:  -- such as convening a meeting or whatever it is they do to come up with regulations.  I don't know what they do.

MS. CASTILLO:  No, Your Honor.  Other than convening the meetings and having the discussions, they have taken no concrete steps --

THE COURT:  Well, those are concrete steps.

MS. CASTILLO:  But, Your Honor, exactly what you just said is what the State has said on the record and -- when they acted to put these emergency rules into the effect, which is the only vote they took, which is to -- to have an emergency rule that suspended the effective date for 120 days.  They said that that was to discuss whether the Ninth Circuit opinion applied, and to -- to consider what actions they could take.

But that is not the same as actually taking any steps to repeal the rules that are preempted or to take any steps to say that those rules will not go into effect ever in the future.

So now all of our plaintiffs are in this untenable

position of having --

THE COURT:  But of course the Ninth Circuit decision is still live, isn't it?  I mean, there's been a motion for an en banc hearing, and perhaps a motion for reconsideration; I don't know.  But the Ninth Circuit has not issued a mandate in that case, which means the Ninth Circuit is not done with that case.

MS. CASTILLO:  Right, but under current authority, Your Honor -- and I have it back at the table -- the fact that there is a pending motion for reconsideration and a pending motion for en banc review does not change the effectiveness of the existing opinion that is in effect and is binding on this Court today.

THE COURT:  Well, I'm not sure it is binding.  I mean, that goes -- I mean, and I don't need to make that decision today, whether it's binding.  I'm just saying, you're saying the State has done nothing.  And they've done a lot.

MS. CASTILLO:  But they haven't done enough to change what is happening on the ground --

THE COURT:  In your opinion, but not in theirs.

MS. CASTILLO:  Not in their opinion --

THE COURT:  Okay.

MS. CASTILLO:  -- but they are not the ones who have to actually comply with these rules and to plan --

THE COURT:  Rules that don't exist yet.

MS. CASTILLO:  Yes, Your Honor, they actually do --

THE COURT:  Okay.  All right.

MS. CASTILLO:  -- exist.

THE COURT:  All right.

MS. CASTILLO:  The current code is the only code that has been adopted by the State Building Code Council, the ones that we are --

THE COURT:  But it's not in effect, I guess is the point I'm making.

MS. CASTILLO:  You're right, Your Honor.

THE COURT:  Okay.

MS. CASTILLO:  It is temporarily --

THE COURT:  Okay.

MS. CASTILLO:  -- not in effect.

THE COURT:  And it may be changed --

MS. CASTILLO:  And it may be changed.

THE COURT:  -- and the State has said they're going to consider changes.

MS. CASTILLO:  But the --

THE COURT:  The State --

MS. CASTILLO:  -- but all of our clients can't predict what is going to happen in the future.  They only have the code as it exists as it is adopted --

THE COURT:  You can't predict what's going to happen in the future, the State can't predict, and the Court can't predict.

So why should your clients be in a position of being able to predict the future?

MS. CASTILLO:  Because if we don't, then our clients can't do business.

THE COURT:  Okay.

MS. CASTILLO:  Because their business relies on months of planning, of design, of architectural supplies, of -- for the architectural design, and being able to line up the workers that they need.

So all of those effects -- all of those steps have to take place now based on what the code is going to be when they're ready to pull the process.

And our declaration by Patrick Hayes outlines every single step that is required in order to finally pull the -- the codes -- I mean, excuse me, the permits in order to comply with the codes.

THE COURT:  Okay.

MS. CASTILLO:  All of that establishes our irreparable harm.  And when you combine that with the Ninth Circuit's sliding scale with respect to preliminary injunctions, when you have serious questions that go to the merits, which plaintiffs have established here with respect to the unlawfulness of the code -- energy code as it stands now, in comparison to the balance of hardships, they tip strongly into plaintiffs' favor. The State's arguments that what they may do in the future does

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 23
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Ms. Castillo*

not outweigh what is happening right now, and it is simply -- as the code stands, it's legally deficient.  They have not taken steps to remove those unlawful restrictions, and they have not taken steps to permanently stop them from taking effect in a few months.

The intervenors' arguments also tried to suggest that there's going to be public confusion if this Court preliminarily enjoins the rules now.  But that is exactly the only step that will take to stop the confusion, because then everybody knows that these rules will not take in effect in 120 days and that the State Building Code Council must start again to develop compliant rules.

And Your Honor addressed the climate issues that intervenors have also raised in their opposition to the preliminary injunction.  But those interests in climate issues are policy issues that cannot outweigh the preemption issues that are in effect now, where Congress has established the requirements for these appliances, and Washington has chosen to say that they're going to be prohibited.  That is unlawful, and those factors all suggest that the public interest and the equities weigh in plaintiffs' favor.

THE COURT:  Okay.

MS. CASTILLO:  If you have no further questions --

THE COURT:  I don't.

MS. CASTILLO:  -- I'll reserve the balance of our time

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 24
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Mr. McGinty*

for reply.

THE COURT:  All right.  Thank you.

MS. CASTILLO:  Thank you.

THE COURT:  I appreciate your answers to my questions.

Mr. McGinty, I assume you want to go first.  Go ahead. I'm just going to grab a thing of water here while you get ready.

You can begin when you're ready.

MR. McGINTY:  Thank you, Your Honor.  Again, William McGinty on behalf of State defendants.  I was planning to address the likelihood of success on the merits today. Mr. Hasselman will be addressing the other two prongs of the preliminary injunction standard.

But I do want to back up just a little bit, in light of some of the argument that's been presented today, and talk a little bit about how the State Building Code Council works, because as presented, I think in the declarations of Stoyan Bumbalov and also the declaration of Kjell Anderson, the State Building Code Council is on a three-year cycle no matter what. So as we stand here today, we don't know what the state building codes are going to look like in three years regardless.  That's because the Washington state legislature has adopted by reference to the international council codes that are adopted by the International Code Council, and the State Building Code Council amends.  And that's what we see on the three-year cycle,

is amendments to the international codes that are presented.

There is no right and there is no ability to rely on the future or certainty of any government action in the future.  So the builders who are saying that what they're trying to do is they are trying to stamp out uncertainty, well, that's never going to happen because the government, the State of Washington, is always updating its codes in lockstep with the best technology and information moving forward.

So getting directly to the likelihood of success on the merits -- and I do want to talk about the Eleventh Amendment, because what plaintiffs need to show is they need to show that there's a clear showing that they're likely going to get the permanent injunction that they've sued about.  The State defendants in this case have immunity under the Eleventh Amendment.  And so we can be pretty sure that they're not going to get that permanent injunction by the time this case is over.

This is a little bit confused by the way that the briefing has played out in this case, only because the plaintiffs originally brought their complaint and originally brought their motion against the SBCC as an entity.  At that point, State defendants raised the defense that it's immune from suit under the Eleventh Amendment, and that argument was not disputed by plaintiffs.

So as we stand here today, I think it's undisputed that at least the SBCC itself is not an appropriate defendant in this

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB 26*
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Mr. McGinty*

lawsuit and should not be preliminarily enjoined in this motion today.

After that, after we raised that argument, plaintiffs amended their complaint to add the individual council members, in an attempt to bring this suit under the exception to Eleventh Amendment immunity under *Ex Parte Young*. But the problem with that is that the *Ex Parte Young* exception requires that the state official sued have some connection with enforcement of the act, enforcement of the law that the plaintiffs are challenging in this case.

Now, the SBCC is a legislative body, a quasi-legislative body. It passes the laws, it writes then down, it hands those laws to the Washington State code reviser, who then compiles them into the Washington Administrative Code, which is then published on the website, and --

THE COURT: I just want to be clear --

MR. McGINTY: Yeah.

THE COURT: -- and interrupt you for just a minute. When you say "it passes laws," it adopts regulations.

MR. McGINTY: It adopts regulations.

THE COURT: Okay.

MR. McGINTY: That's exactly right.

THE COURT: They're not statutes. They're --

MR. McGINTY: They're not statues, no.

THE COURT: Okay. All right.

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 27
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Mr. McGinty*

MR. McGINTY:  But they have the force of law in Washington state.  But it has the same basic function as a legislative body.

Now, the way that the *Ex Parte Young* exception has developed in the Ninth Circuit, the state official that needs to be sued has to either enforce that law that's being challenged, or follow it, implement it in some respect or regard.  And so when you have a case like *Mecinas v. Hobbs*, there the plaintiffs were suing the secretary of state of Arizona about a statute that said that ballots had to be printed in a particular way.  The ballots were actually printed by local elections officials.  But the secretary of state of Arizona had a role in implementing that statute by adopting regulations and publishing a manual that required the elections officials at the local level to print the ballots in the way that the plaintiffs challenged.  In other words, the secretary of state of Arizona was following the statute that the plaintiffs were challenging.

In this case what the plaintiffs are challenging are the rules -- oh, excuse me.  I made a mess.

THE COURT:  It happens.  Do you need a moment to clean it up?

MR. McGINTY:  Yes.  Thank you, Your Honor.

THE COURT:  Okay.  Go ahead.  Do that, and we'll just pause, and let you do that.

MR. McGINTY:  All right.  Well, I hope others will

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 28
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Mr. McGinty*

forgive me for leaving a damp lectern here.

THE COURT:  It happens.  Go ahead.

MR. McGINTY:  What plaintiffs are challenging are the rules that the SBCC adopted.  The SBCC adopts those rules and -- but doesn't follow them, doesn't implement them in any respect. It just gets published in the Washington Administrative Code. Local code enforcement bodies and local permitting bodies are the ones that are responsible for enforcing it and implementing it.  And that is straightforwardly in Washington state law at RCW 19.27.050 and RCW 19.27A (0) and (5).

So in this case, the officials that the plaintiff have sued have no rule, no connection with the enforcement or implementation or even following the rules at issue except in their personal capacities as homeowners, architects, and builders or what have you.  So that's why the *Ex Parte Young* exception to the Eleventh Amendment immunity doesn't apply in this case, and the individual state officials that plaintiffs have sued are immune from suit.

THE COURT:  I want to interrupt you.  I'm following your argument, but I want to clarify.  I'm just scrolling through the file right now.  There's only one complaint, and that is ECF 1.

Has there been an amended complaint?

MR. McGINTY:  There has.  I don't have the ECF number.

THE COURT:  Okay.  Then I missed it, but I'll keep looking.  Go ahead.

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 29
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Mr. McGinty*

MR. McGINTY:  Yeah, of course, of course.

What the amended complaint does, the big substantive change was it added those members of the State Building Code Council, the voting members who vote to adopt the rules or not.

THE COURT:  Okay.  If it's there, it's there.  I just didn't see it.

So are you -- I understand what you're -- oh, there's the first amended complaint; it's at ECF 47.  All right.

But are you saying that in both the first complaint and the first amended complaint they've sued the wrong entity; i.e., the building code and now the members of the building code?  Or would your argument still be relevant on the Eleventh Amendment if they had sued the State?

MR. McGINTY:  It would absolutely still be relevant under the Eleventh Amendment if they'd sued --

THE COURT:  Okay.

MR. McGINTY:  -- the State.

THE COURT:  Okay.

MR. McGINTY:  Obviously the State of Washington is the quintessential entity --

THE COURT:  Right.

MR. McGINTY:  -- that's protected by the Eleventh Amendment.

THE COURT:  Okay.  You've answered my question.  Proceed.

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 30
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Mr. McGinty*

MR. McGINTY:  Of course.

THE COURT:  Yeah.

MR. McGINTY:  So I think we've covered the Eleventh Amendment.

I do want to touch on Article III standing and also ripeness, because, of course, the State Building Code Council has delayed the effectiveness of these rules to, at earliest, October 29th.  There's a declaration from Kjell Anderson who indicates -- and, again, the State Building Code Council is a multi-member voting body.  It's impossible to say what it will or it will not do at any point in the future before they hold a public meeting about something and vote on it.

But Kjell Anderson is the chair of the committee who is considering these particular challenged provisions.  And he's declared that it's his understanding and his intent that what the State Building Code Council is likely to do is amend those code provisions so that they fit very clearly under the exemption to preemption under the Energy Policy and Conservation Act.

Now, I want to be clear, we're not conceding, tacitly or otherwise, that the rules as they exist today are preempted.  But one of the SBCC's interests is, of course, having rules that are not even under a cloud of litigation or a cloud of preemption.  So they plan to amend them so that they clearly fit under the exemption to preemption under the energy policy --

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

THE COURT:  At least in the State's opinion or the SBBC --

MR. McGINTY:  Yeah, technically -- again, because the SBCC is a multi-member voting body, it's Kjell Anderson who submitted that declaration.  He's the chair of the committee. And so the way that the SBCC works in the normal course, and they're using the normal course to do these amendments, is it convenes a technical advisory group with people who are not members of the SBCC -- in fact, I think plaintiffs have submitted a declaration from one of the members of that technical advisory group -- in order to talk about the policy at issue, in order to see what the best solution would be.

Then the rule, the proposed amendment to the International Code Council's rules gets promoted to a committee of the SBCC, which is the one that Kjell Anderson is the chair of.  Then that passes to the SBCC as a body, at which point the SBCC considers whether to adopt the proposal that was sent up, first, in the TAG, then to the community, then to the SBCC as a body.

THE COURT:  Can they do this all by October, I'm going to say 29th -- I don't know if that's the exact date -- can they do this by that date?

MR. McGINTY:  Kjell Anderson believes that they can.

THE COURT:  Okay.

MR. McGINTY:  Kjell Anderson believes that they can.

But, of course, you know, it's a legislative process like any other.

THE COURT:  What happens if they don't?

MR. McGINTY:  If they don't, then they have tools at their disposal to delay the effectiveness of the challenged rules even further.

Now, I want to say, when I say they've delayed the effectiveness of the challenged rules, that's true.  It's also true that they've delayed all of the rules, because they're all interconnected.  They all have multiplicity of cross-references.  So all of the building codes that were set to go into effect July 1st, those have all been delayed until October 29th, as they figure out how to disentangle the rules that they are considering, and figuring out how to rebalance everything against everything else.

THE COURT:  Okay.  You've answered my question.  Go ahead.

MR. McGINTY:  So with respect to ripeness and standing, what plaintiffs need to show is that these rules that are not effective today, may never become effective ever, particularly under the case of *Thomas v. Anchorage Equal Rights Commission*, they need to show that these rules have a realistic danger of causing them a direct injury.  That is the standing requirement.  And in this posture, where the state building code [sic] has delayed those rules, is saying it's going to amend them, has

taken steps to amend them by convening the technical advisory group to start that process, they just can't make that showing.

Plaintiffs have basically three groups of injuries. The first is potential builders who have permits that are ready to go. They have permits that are ready to go, they can submit those right now, today, and the codes without the challenged provisions will be applied to them.

They have builders who are in the planning stages -- and that's on Page 8 of their reply -- they are in the planning stages of projects and might have a permit ready to go at some point in the future. But that's a hypothetical and speculative injury because we don't know if that project is ever going to move beyond the planning stages.

And then they have customers who are telling them that these rules are making us change our behavior so that we don't install natural gas.

Now, the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 US 555 at 562, talks about what a plaintiff needs to show when their injury depends upon the unfettered choices of third parties. They need to show that not only is that third party making their choice because of the challenged action, they also need to show that the relief they are asking for would cause that third party to make a different choice.

Now, the most we have here is, frankly, double hearsay

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 34
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Argument by Mr. Hasselman*

that says that customers are making choices because of the rules, but we don't have any evidence whatsoever that a different choice would be made if the plaintiffs get their requested relief.

And I do want to quibble a little bit about the standard that's applied at this stage.  Plaintiffs have argued today that we're at the pleading stage and, therefore, allegations are sufficient.  But that's not quite right.  We're on a motion for preliminary injunction, and so plaintiffs need to make a clear showing that jurisdiction exists.  And that's from the *Winter* factors in conjunction with *Lujan v. Defenders of Wildlife,* where the Supreme Court says that standing is required at the standard of the stage that you're in.  If we were on a motion to dismiss, I would agree; allegations would be sufficient.  But we're not.  We are on a motion for a preliminary injunction.

So with that, I'd like to yield the remainder of my time, such as it is, and a damp podium, to Mr. Hasselman.

THE COURT:  All right.  Thank you.

Mr. Hasselman, you have the remainder of his time and a damp podium.

Do you need a minute to --

MR. HASSELMAN:  I think we're good.  Thank you.

THE COURT:  I can't really get a sense as to --

MR. HASSELMAN:  No, we're okay.

THE COURT:  Okay.  Go ahead then.

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

MR. HASSELMAN:  So as Mr. McGinty indicated, I would like to focus my time on the question of irreparable harm and the balance of equities.  And I have three brief points as to why plaintiffs do not -- why their showing of harm falls short of the demanding standard for preliminary injunction.

First, most of the harm they've alleged in this case is really speculative.  There is almost no connection between the claimed harm and these rules, which, frankly, were only recently enacted, and then immediately suspended.

Plaintiffs are sellers and consumers of fossil methane.  That business model has faced steep headwinds here in Washington because we have policies to reduce our reliance on fossil fuels, and basic consumer preferences are changing.  And those things are changing in light of the climate crisis and in light of the significant public health implications of burning fossil fuels.

You know, for example, we submitted a declaration from Ms. Hall from Climate Solutions.  In her declaration at Paragraph 16 she talks about a study that, even before these rules were released in draft form, nearly 90 percent of new construction in Washington used electricity rather than gas for heat.

So they haven't made the requisite showing that it's these rules -- again, just enacted, recently suspended -- that are the cause of their harm.  And as Mr. McGinty emphasized, as of today, anyone who wants a building permit, and, you know, at

least until October 29th, anyone ready to file a building permit for a structure with gas heating, they can do that, and under Washington law, that locks in their ability to build that, even if it's built downstream in time.

And that takes me to my second point. So they have argued that for some projects the planning process takes too long to get an application submitted before October 29th, and so they have to anticipate what the rules are going to be. And so I suppose the harm is from -- arises from the fact that the rules are out there looming in the future and influencing what choices people are making; or alternatively, that there's uncertainty about what the rules are going to be.

Well, whatever the merits of that argument, the problem is that an injunction would not do anything to ameliorate it. Now, within a few months there are going to be new rules, revised rules and a new effective date. As of today, everybody is in the same position that they were in before these rules were adopted. And what I mean by that is the 2018 version of the rules still applies. And in the future, there are going to be revised rules, and nobody knows what they look like yet.

What we do know is that those rules are going to have to comply with the state energy code, which calls for phasing out the use of fossil fuels in buildings and compliance with greenhouse gas targets.

So if a builder needs months and months of lead time,

knowing what the standard is going to be in advance -- no one can provide that.  An injunction isn't going to solve that problem.  And if anything, it's only going to increase the regulatory uncertainty and public confusion around the standards, and that just isn't the kind of irreparable harm that warrants an injunction.

And that takes me to my final point.  For the reasons we've just discussed, we don't think an injunction would mean any big uptick in buildings built with fossil gas, but if we're wrong about that, and plaintiffs are right, well, then there are big questions about the balance of equities and the public interest, because that harms us and that harms the public, and it undermines the state policies of its climate protection goals and its public health goals that are enacted into law.

You know, one thing that I think we all agree on is that buildings last a long time, and that it is not easy to swap out one form of energy infrastructure for another one after the fact.  So every building that goes up in the next year or two that uses fossil gas is either going to be emitting pollution for the next 50 years in contravention to state policies and goals or it's going to have to be expensively retrofitted.  So, in other words, if plaintiffs are correct that an injunction is going to address their harm by allowing a whole lot of building with fossil gas, then this Court needs to weigh very carefully the adverse impact that is going to have on us in the public.

So in closing, Your Honor, a preliminary injunction against statewide environmental and public health rules is an extraordinary request.  And I'm not here to spike the football, but it doesn't feel like this was fully thought out.  There are big jurisdictional problems with this case.  They've got what they wanted --

THE COURT:  You can spike the football.  Plaintiff danced.  So it would be a --

MR. HASSELMAN:  Keeping it real here, Your Honor.

THE COURT:  Okay.

MR. HASSELMAN:  But they've got what they wanted.  The State is undergoing a process.  They've hung their case on, frankly, a pretty wild Ninth Circuit opinion that is not final, and they haven't connected the harm to the -- to the challenged action.

So we respectfully ask, let the process play out.  Let the rule amendment go forward.  We have months to do that.  And -- and we ask that you deny the injunction.

THE COURT:  Thank you.

All right.  Brief rebuttal.

MS. BERGE:  Yes.

THE COURT:  Okay.  I'm sorry to tease you about --

MS. BERGE:  You know what, Your Honor?  It's a happy Thursday.  I will be very short, as I'm going to cede most of the rebuttal time to Ms. Castillo.

THE COURT:  All right.  Very good.

MS. BERGE:  Very quickly, this claim that the Ninth Circuit opinion in *CRA v. Berkeley* is not final is false. There's specific case law at *Wedbush v. SEC*, 714 F2 923 --

THE COURT:  No, I didn't mean to suggest anything.  I mean, it's -- I'm duty bound to follow the Ninth Circuit, and I have tried to do that with every decision that I've made, including in this one.  But my point was that that case is still going on.  I mean, there are still motions pending in that case.

MS. BERGE:  Even so, Your Honor --

THE COURT:  Yeah.  Okay.

MS. BERGE:  -- this particular case says even though that might be the case, the mandate --

THE COURT:  Yeah.

MS. BERGE:  -- not issuing is ineffective --

THE COURT:  Yeah.

MS. BERGE:  -- and also I would note, Your Honor, to the point of *Berkeley* being a wild decision, as people have described it, we believe that we still win this case on the merits -- and we'll present this at summary judgment -- even under other existing case law, including the *BIAW* decision --

THE COURT:  Yeah.

MS. BERGE:  -- from 2012, the *HRI* decision from 2010; and indeed, actually, under the lower court ruling in *Berkeley,* we still win this case, because this case, unlike that case,

*Rivera et al. V. WA State Building Code Council et al./1:23-cv-3070-SAB* 40
*Motion for Preliminary Injunction Hearing/July 18, 2023*
*Rebuttal Argument by Ms. Castillo*

directly restricts appliances that are covered by the -- the energy use of appliances that are covered by EPCA.

THE COURT:  Okay.

MS. BERGE:  Thank you, Your Honor.

THE COURT:  Yeah.  And I didn't use the word "wild."  I think someone else did, and they're free to do that.

MS. CASTILLO:  Thank you, Your Honor.

I want to make three points.  First of all, with respect to the State Building Code Council and the right to rely on uncertainty in the future is a misnomer in this case because there are two codes that are -- have been adopted by the State Building Code Council, the one that is currently in effect and the one that will take effect on October 29th.

THE COURT:  Maybe.

MS. CASTILLO:  Maybe.  But those are the only two codes that are in existence that have been adopted by the State Building Code Council.  And that is why our clients have only those two sets of codes to be able to build and design and plan for their projects.

Second of all, with respect to the ripeness and the harm issues, that is exactly what is addressed in the declarations of, for example, Mr. Condron, which is found at ECF 48-2, in which he is -- he has gone on record in saying that he has to provide his clients with building plans that both comply with the current code as well as the one that will be in -- that

KIMBERLY J. ALLEN, RMR, CRR, RPR, CCR
OFFICIAL COURT REPORTER

could go into effect on October 29th because they do not know what is going to happen in the future.  And those two -- having to do those dual type of plans have already cost, at a minimum, $15,000 in order to have an alternative plan.  And that does not alone account for the supplies that they have to purchase, the appliances that they have to purchase and order, as well as the individuals who have to both install the infrastructure as well as the appliances.

Finally, I'd like to address this Eleventh Amendment issue regarding the State Building Code Council.  All that is required under the Ninth Circuit's precedent is that there must be some connection with the enforcement of the act.  The Council -- State Building Code Council members easily satisfy this modest requirement because they are the body that is required -- is -- has authority to adopt the rules that the entire state must follow.

It is simply disingenuous for the State to suggest that the State Building Code Council can just create these rules and wave their wand like a -- like a magician and then stand back and say we don't care what happens to them.  It's also disingenuous for them to suggest that local officials can just simply disregard the rules that are in place.  And that is exactly why the *Mecinas* case is directly on point, in which the Ninth Circuit both granted a preliminary injunction and found that the secretary of state in that instance did not have

Eleventh Amendment immunity because the secretary of state was responsible for promulgating the rules that all local officials had to follow.  That is the exact scenario that we have here with respect to the State Building Code Council.

Plaintiffs have established that there is a strong likelihood of success on the merits with respect to preemption of these rules.  We have established concrete and immediate harm that is occurring now.  And all of the equities and public interest go in favor of this Court enjoining the rules that have been adopted by the State Building Code Council.

Thank you, Your Honor.

THE COURT:  Thank you.

I want to make -- begin my remarks by thanking all the parties for being here in Yakima today.  It's an important case, some important issues, and I appreciate the fact that you've all come prepared and with efficient arguments to help the Court make its decision.

The Court will deny the motion for a preliminary injunction, and I want to make the following comments and record for that.

Preliminary injunctions should be rarely given and, in this Court's opinion, especially when the case involves issues of public policy, such as the issues involved in this case.

I want to address the four prongs in terms of the merits.  And the Court is not considering for purposes of this

hearing, purposes of this motion, the issues regarding the Eleventh Amendment because I don't think I need to.  Those are important issues.  They are involved in this case, and it's apparent that those issues will need to be resolved in the future, and probably fairly quickly, but it's not -- it's not necessary for the Court to address it for purposes of this motion.

On the merits the Court will make the following observations:  It cannot be said that the plaintiff is likely to succeed on the merits, because the state rules in question have been suspended, pending review and possible revisions.  The Court notes that these rules were adopted before the *Berkeley* decision from the Ninth Circuit.  Then the *Berkeley* decision was made.  The *Berkeley* decision, of course, is binding on this Court.  But the *Berkeley* decision is still pending.  There are motions for reconsideration.  There are motions for en banc rulings.  So there's a possibility the *Berkeley* decision may be altered in some way.

But that's not necessarily important.  What's important is this is a live issue, and the State is considering *Berkeley*; has suspended the rules that they adopted before the *Berkeley* decision, and is considering what they need to do, if any, to react to the decision from the Ninth Circuit in the *Berkeley* case.

The Court intends to stay out of the State's way.  In

fact, given the status of this case, given the status of the state rules, there's a real question in this Court's mind whether this case involves a legitimate case or controversy and whether or not this Court has jurisdiction.

On irreparable harm, at this point any harm to the plaintiff is purely speculation, and there's no showing of real imminent harm to any plaintiff or any claimant involved in this case because there are no rules at issue that are enforceable yet.

In terms of the balance of equities and the public interest, the Court will conclude that the balance of equities and the public interest prongs tip in favor of the State.  The State suffers irreparable harm anytime a court intervenes and enjoins the enforcement of a rule or a statute enacted by the people of the state or their representatives, which is what may or may not happen in this case.  It hasn't happened yet.

A preliminary injunction would have a chilling effect on this state or other states or other local governments from wrestling with the important issues of climate change, which this state is trying to do.  Washington state has shown it is committed to addressing the issues of climate change and is doing so consistent -- or is trying to do so consistent with all federal and state legal requirements.  The Court will stay out of its way and will enter this dispute, will become involved in this dispute only when necessary, and there's no showing the

necessity is here today, so the preliminary injunction motion is denied.

Thank you.  Court's in recess.

THE COURTROOM DEPUTY:  All rise.

Court is in recess.

(Hearing concluded at 11:00 a.m.)

C E R T I F I C A T E

I, KIMBERLY J. ALLEN, do hereby certify:

That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Richland, Washington;

That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

DATED this 1st day of August, 2023.


_____

Kimberly J. Allen, CRR, RMR, RPR, CCR(WA)
Washington CCR No. 2758
Official Court Reporter
Richland, Washington